**John R. WEST, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Hercules JOHNSON and John R. West, Appellants,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 4557, 4558.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1968.

Decided Jan. 28, 1969.

John J. Hurley, for appellants.

Albert W. Overby, Jr., Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker, Daniel J. Givelber and John F. Rudy, III, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

KELLY, Associate Judge:

These appeals pose the question of whether it was error to deny appellants' pretrial motion to suppress, which was renewed and again denied at trial, and to allow into evidence items taken from appellants at the time of arrest.

The arresting officer testified[1] that on June 13, 1967, he set out on routine patrol of the downtown area of the city in an unmarked police car. Before leaving the precinct he had been instructed to enforce pedestrian violations more stringently because

6. Richardson v. Gregory, 108 U.S.App.D.C. 263, 281 F.2d 626 (1960).

1. At the pretrial hearing on the motion to suppress, appellants' testimony contradict- ed that of the officer in many respects, creating factual issues to be determined by the court. Appellants did not testify at trial.

of the number of pedestrian fatalities and other pedestrian accidents which had occurred. While stopped in traffic in the 700 block of Fourteenth Street, N. W., the officer observed appellant Johnson exiting from a Peoples Drug Store and appellant West standing in the proximity of the front entrance to the store. He then saw both men, carrying brown paper bags and coats over their arms, hurriedly walk north on Fourteenth Street. They cut across the street, prior to reaching the crosswalk, against a traffic light, causing traffic to come to a stop so as to avoid striking them. Because of the heavy traffic the officer did not then stop and apprehend appellants, nor did he blow the horn or the siren to attract their attention. After appellants had crossed the street a third man joined them and all three then proceeded west on New York Avenue to Fifteenth Street, left on Fifteenth to G Street, and left on G until they came to another Peoples Drug Store. During this time the officer continuously kept appellants under observation, making four turns to follow them for the distance of these several blocks. When he was finally able to safely stop the scout car, appellants were waiting on the sidewalk for the third man, who had entered the drugstore. The officer testified that he approached appellants and advised them that they had walked against a traffic light, which advice evoked a vigorous denial from West. The officer then asked them collectively for identification, but does not recall if any identification was proffered. He stated that both Johnson and West appeared extremely nervous. He noticed that Johnson was carrying a paper bag in which an unopened carton labeled "Head and Shoulders Shampoo" was visible. When asked, however, Johnson said the bag contained clothing. Meanwhile, West continued to deny the violation and stated that he was not going to pay the ticket. After informing

appellants they were under arrest for the pedestrian traffic violation,[2] the officer called for a patrol wagon to take them to the precinct. He then took the paper bag with the shampoo in it from Johnson and a paper bag, containing five packs of new razor blades, from West. He also found narcotics paraphernalia in the pocket of the coat West was carrying. Appellants were then transported to the station house and the officer proceeded in the scout car, first to the drugstore on Fourteenth Street where the manager identified the shampoo and razor blades as stolen property, and then to the precinct.

In addition to the pedestrian traffic violation, charges of petit larceny[3] were filed against both appellants, but only appellant Johnson was convicted. Appellant West was convicted on a separate charge of possession of implements of crime.[4] It is the contention of appellants that their arrest was on suspicion of shoplifting and a sham, the pedestrian violation being used only as a pretext to enable the officer to search them.

A police officer may make an arrest without a warrant for an offense committed in his presence, D.C.Code 1967, § 4–140 (Supp. I 1968), and incident thereto make a search for weapons. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).[5] But it is well settled that an arrest may not be used as a subterfuge to search for evidence of a crime. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977 (1950); Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961). In this case the credible evidence was found to be that the police officer arrested appellants after he saw them walk against a traffic light, and it was only because of the heavy traffic that the officer could not stop

2. Traffic and Motor Vehicles Regulations, Part I, Art. III, § 11(c) (2).

3. D.C.Code 1967, § 22–2202.

4. D.C.Code 1967, § 22–3601.

5. The officer testified that persons arrested were always searched before being put in the patrol wagon.

and apprehend appellants before they had walked some distance from the point of the violation. His testimony was that he did not arrest or search the third man who was with appellants when he finally caught up with them because he had not seen him commit any violation. Moreover, the officer presented a cogent reason for taking appellants into custody rather than following the normal procedure of issuing them traffic citations. He described in particular West's vigorous denial of the offense and his statement that he was not willing to pay the ticket. Although the officer admits that the unopened case of shampoo which he saw, along with Johnson's statement that the bag contained clothes, aroused his suspicion, we would not on that account be warranted in invalidating what the court found to be a valid, independent arrest for the violation of a pedestrian traffic regulation.[6]

As was said in Hutcherson v. United States, 120 U.S.App.D.C. 274, 278, 345 F. 2d 964, 968, cert. denied, 382 U.S. 894, 86 S. Ct. 188, 15 L.Ed.2d 151 (1965) (concurring opinion):

When a police officer observes overt criminal conduct and makes an arrest, the fact that the officer suspects other violations not manifest at the time, such as illegal possession of * * * stolen goods is totally irrelevant.

Appellants cite Hill v. United States, D. C.Cir., (No. 21,162 decided Nov. 7, 1968) as bearing directly upon this case. In *Hill,* in response to an allegation of sham arrest for a minor traffic offense, the court remanded the case to allow the defendant a more comprehensive hearing on his motion to suppress. In the present case, however, appellants were given an extensive hearing on the motion, which included an inquiry into the nature of police routine followed in dealing with pedestrians who violate the traffic regulations, the number of arrests made by the officer that day and for the prior six months for pedestrian violations, and the number of those persons who were taken into custody. The officer also testified that appellants were unknown to him, and there was no testimony that prior to their arrest the officer suspected appellants of any other criminal offense.

We conclude that the record in this case supports the finding of the trial court that the arrest was lawful and the denial of appellants' motion to suppress.[7]

Affirmed.

6. Worthy v. United States, D.C.Cir., (No. 20,888 decided Aug. 6, 1968) ; cf. Johnson v. United States, 125 U.S.App.D.C. 243, 370 F.2d 489 (1966).

7. Appellants have not raised, briefed, nor argued the question of the permissible scope of a search incident to an arrest for a traffic violation. See, e. g., Hill v. United States, D.C.Cir., (No. 21,162 decided Nov. 7, 1968) ; People v. Rodriguez, 47 Misc.2d 551, 262 N.Y.S.2d 859 (1965) ; People v. Gonzales, 356 Mich. 247, 97 N.W.2d 16 (1959).