**Floyd Herman RANDALL, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 71-2528**

**Summary Calendar.**[*]

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1972.

Rehearing Denied March 29, 1972.

\* ▉ Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Floyd H. Randall, pro se.

William J. Schloth, U. S. Atty., Ronald T. Knight, Asst. U. S. Atty., Macon, Ga., for respondent-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Floyd Herman Randall represented by privately retained counsel, was tried by a jury and convicted on November 22, 1968 on four counts charging interstate transportation of stolen motor vehicles in violation of 18 U.S.C. § 2312. His conviction was affirmed on direct appeal in United States v. Valdez, 418 F.2d 363 (5th Cir. 1969). Thereafter Randall submitted his petition to vacate sentence to the district court and on April 8, 1971, the court denied the petition without a hearing. We affirm.

 In denying Randall's § 2255 motion to vacate sentence, the district court noted that Randall's conviction had been reviewed and affirmed on direct appeal. "All of the contentions made by the Petitioner were made by him before the Court of Appeals or could have been made by him before that court. None of them constitute an adequate basis for the relief sought." We agree with the district court that Randall's contentions are without merit. Nevertheless federal courts are not spared the burden of examining the merits of an asserted constitutional error raised in a § 2255 petition simply because the petitioning federal prisoner failed to assert the error on direct appeal. Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).[1]

In his petition to vacate Randall urged a number of grounds for relief.[2] We

---

1. In discussing the law of Federal Habeas Corpus which underlies 28 U.S.C. § 2255 the Supreme Court said:

 '[T]he writ is not designed for collateral review of errors of law committed by the trial court—the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line.' But we . . . recognized that federal habeas relief for *constitutional* claims asserted by federal prisoners is not limited by [the] rule [that a motion under § 2255 cannot be used in lieu of an appeal].

 Kaufman held a claim of unconstitutional search and seizure cognizable under § 2255. Certainly Randall's allegations that his oral confessions introduced at trial were involuntary also raises a constitutional claim cognizable under § 2255. *See* Miranda v. Arizona, 384 U.S. 436, 464, 86 S.Ct. 1602, 16 L.Ed.2d 694, 717–718 n. 33 (1966) ; Fay v. Noia, 372 U.S. 391, 414, 83 S.Ct. 822, 9 L.Ed.2d 837, 854 (1963).

2. Appellant sought relief on grounds that (1) a government agent promised him immunity if he made a statement incriminating his co-defendants, (2) he was denied counsel after his arrest and during interrogation, (3) a sham, warrantless arrest was contrived by city police and federal agent to force him to confess, (4) the indictment was not based on legitimate evidence, (5) the grand jury was not convened by the court, (6) the prosecution suppressed evidence favorable to the defense, (7) the U. S. Commissioner failed to advise him of his right to a

have reviewed each of his contentions and find that the only matter requiring any discussion is Randall's allegation that the oral statements he made to an FBI agent were involuntary and therefore improperly introduced at his trial.[3] Randall contends that his incriminating statements to the FBI were given following a promise by the FBI agent of immunity from prosecution in exchange for statements incriminating his co-defendants. He further alleges that on a separate occasion he was arrested by the Tampa City police, taken to jail and later transported to a motel where he was interrogated at length by FBI Agent Burgett without counsel over his objection and request for counsel. Randall also complains that the court erred in failing to determine out of the presence of the jury whether his statements were voluntarily given to the FBI. In support of his contention he cites Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and 18 U.S.C. § 3501, among others.

A careful examination of the record and trial transcript reveals that in advance of trial Randall and his attorney were informed of the substance of the oral statements at trial. Counsel for Randall, Mr. Tamargo, then presented a number of pre-trial motions, including a motion to suppress the statements of the defendant.[4] No evidence was offered during the hearing on the motion by either the defendant or the government. After a brief recess, the court denied the motion.

During the trial FBI Agent Burgett testified to three conversations he had with Randall prior to his arrest. Burgett testified that before each of these conversations he had identified himself and given Randall the "Miranda" warnings.[5] The first and second conversations were separated by five months; the second and third were seven months apart. During the direct examination of Burgett concerning Randall's statements counsel for Randall objected to portions of the testimony on hearsay grounds. At the close of the direct examination the jury was excused and counsel moved for a mistrial on the grounds that the agent's testimony prejudicially re-

---

removal hearing, his right to counsel at that hearing, and his right to view the arrest warrant and indictment, (8) he was wrongfully denied a continuance, giving counsel insufficient time to prepare, (9) he was denied the right to inspect the grand jury minutes, and (10) the trial court failed to hear evidence out of the presence of the jury on the voluntariness of the confession.

3. The denial of the pre-trial continuance was considered by this court on direct appeal and need not be reconsidered. Ingram v. United States, 299 F.2d 351 (5th Cir. 1962) ; Griffin v. United States, 352 F.2d 307 (5th Cir. 1965).

4. MR. TAMARGO: Motion to suppress statement of the defendant, Your Honor.
THE COURT: He says he has no written statement.
MR. BUFORD: I have no written statement from the defendants and I've advised them in this oral conference the substance of what they told the FBI.
MR. TAMARGO: Your Honor, I would like this to apply to any statements, admissions or anything. I just want to merely protect the record, so that at the time of trial I can properly object to it.
THE COURT: All right.

5. Q. *Mr. Johnson*: Mr. Burgett, you stated that you had occasion to talk to Floyd Randall, is that correct?
A. Yes sir.
Q. On what date, do you recall?
A. I talked to Mr. Randall the first time about October of 1967.
Q. What, if anything, did you say to him prior to talking with him?
A. I introduced myself to Mr. Randall and explained to Mr. Randall that he did not have to make any statements to me, that he had a right to remain silent; that any statements he made might be used against him; he was advised of his right to an attorney. He was advised that, should he not be able to afford an attorney, one would be appointed for him; and also was advised that he could stop at any point during the conversations if he so desired.
Q. What, if anything, did Randall say or indicate to you concerning his understanding of what you said?
A. He stated that he understood.

flected upon Randall's exercise of his Fifth Amendment rights by remaining silent following arrest and because of certain other instructions which the court had given the witness. During his cross examination of Burgett, counsel for Randall inquired about any record the agent may have made of the conversations and the agent's precise recollection of Randall's statements. Following cross examination Randall's counsel made a motion to strike the agent's testimony as not being capable of belief. At the close of all the evidence counsel for Randall renewed his earlier motions for severance, discovery, mistrial, to strike the witness Mrs. Holland's testimony, and for a judgment of acquittal.

We hold that the district court correctly denied relief. The record conclusively demonstrates that Randall failed to raise before or at trial any issue as to the voluntariness of his statements. The record also clearly and affirmatively demonstrates that Randall's statements were voluntarily made after he had been provided with the *Miranda* warnings and had indicated that he understood the warnings and was waiving his rights.

The record does not contain as much as a whisper to suggest the presence of any issue as to the voluntariness of Randall's statements. The oral motion to suppress did not even allege a basis for the granting of the motion. Counsel for Randall suggested that the pre-trial motion was merely a predicate for a "proper objection" at trial. But while he made many objections and vigorously defended Randall at trial, counsel did not object to Burgett's testimony as containing involuntary or coerced statements from the defendant. Counsel closely cross examined Burgett about the statements, but did not inquire as to the circumstances under which they were given. Counsel did not seek to examine Burgett out of the presence of the jury or demand that the government make any further showing that the statements were voluntary.

Nor did Randall's counsel raise the issue of voluntariness when he moved for a mistrial at the close of Burgett's testimony on direct examination. Counsel did not in any way suggest to the court that the testimony might be improper because the statements might have been coerced or given in violation of Randall's right to counsel. In addition there was no testimony or a conflict in testimony concerning the statements which would have signaled the presence of an issue of voluntariness.

Jackson v. Denno and the cases following it provide that a defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined. 378 U.S. at 380, 84 S.Ct. at 1782, 12 L.Ed.2d at 918. 18 U.S.C. § 3501 is the statutory implementation of the *Jackson* procedure for the federal courts.

> In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

18 U.S.C. § 3501(a)

This court has viewed *Jackson* as setting forth the procedure which is constitutionally required to resolve any issue as to the voluntariness of a confession. However, where the voluntariness of a confession is never put in issue during trial we have refused to require the court to hold a voluntariness hearing.

In Evans v. United States, 377 F.2d 535 (5th Cir. 1967) we noted:

> Appellant also contends that the trial court erred in not holding a hearing to determine whether her "confession" to the agents was voluntary. Jackson v. Denno, 1964, 378 U. S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Suffice it to say that voluntariness was never put in issue. Not only was there no objection but there was no way the trial court could have been aware that the voluntariness of her oral statements to the agents was questioned. See 378 U.S. at 374, 84 S.Ct. 1774. There must be a limit to the clairvoyance we require the trial courts to possess.

*See also* Sellers v. Smith, 412 F.2d 1002 (5th Cir. 1969). Other circuits considering the problem have approved this position. United States v. Taylor, 374 F.2d 753, 756 (7th Cir. 1967); Lundberg v. Buchkoe, 389 F.2d 154, 157 (6th Cir. 1968); Garrison v. Patterson, 405 F.2d 696, 697 (10th Cir. 1969); La Brasca v. Misterly, 423 F.2d 708, 709–710 (9th Cir. 1970). *Cf.* Hizel v. Sigler, 430 F.2d 1398, 1401 (8th Cir. 1970).

 The record shows that it was undisputed at trial that Agent Burgett gave Randall the Miranda warnings prior to each of their conversations. Regardless of whether the circumstances of Randall's interrogation were such as to require the Miranda warnings, Burgett's unchallenged testimony that Randall was given the warnings and that understanding the warnings Randall then made the statements was sufficient to sustain the prosecution's heavy burden of demonstrating that Randall had knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694, 724 (1966).

We have reviewed Randall's other contentions and find them to be without merit. The judgment of the district court is affirmed.